# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFERY D. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-09-703-M |
| ) | |
| (1) THE STATE OF OKLAHOMA, ex rel., ) | |
| THE OKLAHOMA STATE REGENTS OF ) | |
| HIGHER EDUCATION, a state agency; ) | |
| (2) SID HUDSON, Individually; ) | |
| (3) KURT SNODGRASS, Individually; ) | |
| (4) JANNA JULIAN, Individually; and ) | |
| (5) NANCY CONNALLY, Individually, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment with Brief in Support [docket no. 38], filed January 3, 2011. On February 14, 2011, plaintiff filed his response, and on February 22, 2011, defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

## I.   INTRODUCTION

Plaintiff commenced this action against defendants in a case arising out his employment with the Oklahoma State Regents of Higher Education ("Regents"), an agency of the State of Oklahoma. Plaintiff, an African-American, worked as a System Security Specialist in the Regent's Information Technology ("IT") department.

In May 2008, the Regents contracted with Securio Group, a.k.a. True Digital Security ("True Digital"), a third-party consultant, to perform an Information Technology Security Risk Assessment ("Risk Assessment") and to review IT staffing. The Risk Assessment required True Digital to monitor and scan the Regents' system for potential security threats. On June 27, 2008, True Digital

presented an Operations Management Assessment and Validation ("Preliminary Report"), which proposed reorganizing the department and/or realigning positions in IT to better suit the needs of the Regents.

On July 1, 2008, the Regents posted an internal vacancy announcement for the position of LAN Systems Manager, and plaintiff applied for this position. On July 15, 2008, the interview committee of the Regents interviewed plaintiff and Ronnie Nguyen, an internal candidate of Vietnamese descent, for the LAN Systems Manager position. By a margin of one vote, the five member committee recommended plaintiff for the LAN Systems Manager position. Thereafter, the LAN Systems Manager position was withdrawn and reclassified pursuant to the reorganization. Accordingly, the Regents informed both plaintiff and Mr. Nguyen that neither would be promoted to the LAN Systems Manager position.

On December 21, 2008, True Digital informed the Regents that a particular host on the Regents' system had been observed communicating with hosts in the Russian Business Network, causing a security threat to the Regents' IT system. Allegedly, plaintiff's laptop was connected to the port associated with the threat. Therefore, on December 22, 2008, employees of Avansic, a third-party e-forensics group, arrived at the Regents' offices to collect plaintiff's laptop for a forensic investigation. Avansic employees returned the laptop to the Regents on January 9, 2009, and the laptop was secured pending receipt of the final forensic report.

The initial search of plaintiff's laptop did not find any improper software or files. However, on January 16, 2009, True Digital and Avansic requested to conduct further forensic investigation on plaintiff's laptop. At the time, plaintiff was out of the Regents' office on sick leave. Therefore, the Regents contacted plaintiff by phone to request his laptop password for purposes of the forensic

investigation by True Digital and Avansic.  Plaintiff eventually provided the following password: fuckth3m@ndf33dth3mb3@ns.[1]  Purportedly, the password was typed into plaintiff's laptop and triggered a logic bomb[2], which completely destroyed the hard drive on plaintiff's laptop.

On January 16, 2009, the Regents terminated plaintiff's employment for the destruction of state property and failure to cooperate in a security investigation.  In March 2009, the Regents uncovered a number of emails purportedly evidencing plaintiff's use of state resources as part of a DVD pirating ring, which consisted of plaintiff and other employees of the Regents.  The emails allegedly demonstrate that the DVD ring members conducted their business on state time using state resources, as DVDs were copied on state-owned equipment, and at times the participants used blank DVDs from the Regents' inventory.

On May 4, 2009, plaintiff brought the instant action against defendants in the District Court of Oklahoma County, State of Oklahoma.  On July 7, 2009, defendants then removed the case to this Court.  Plaintiff asserts the following causes of action: (1) violation of 42 U.S.C. § 1981 against the individual defendants Sid Hudson, the Regents' Chancellor for Legislative Relations, Communications, Economic Development and Research; Krut Snodgrass, the Regents' Vice Chancellor for IT & Telecommunications; Janna Julian, the Regents' Director of Human Resources; and Nancy Connally, the Regents' Associate Vice Chancellor for Operations and Legal Affairs; (2)

---

[1] The Regents contend that the password, when translated from characters to letters, reads "fuck them and feed them beans."  According to urbandictionary.com, this expression is used "when you have no regards for a person, race or group of people, in which you may have differences, then "fuck 'em'" (in the sense of screw them or to hell with them) and "feed 'em beans'" (as in the [sic] they don't deserve anything of any value from your world).

[2] A logic bomb is a piece of code intentionally inserted into a system that will set off a malicious function when triggered.

violation of 42 U.S.C. § 1983 against the individual defendants; (3) intentional interference with contractual relationship against the individual defendants; (4) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 against the Regents; (5) retaliation in violation of Title VII of the Civil Rights Act of 1964 against the Regents; and (6) retaliatory discharge in violation of Oklahoma public policy. Defendants now move for summary judgment as to plaintiff's claims.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pacific R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

## III. DISCUSSION

A. Qualified Immunity

The individual defendants assert they are entitled to summary judgment on plaintiff's first and second causes of action pursuant to the doctrine of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Tenth Circuit observes:

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion. The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity.

*Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

In this case, "[h]owever, even if plaintiff was able to establish a constitutional injury, [he] failed to address the issue of qualified immunity in h[is] Response and, thus, [he] has waived any argument that the defense does not apply." *Taneff v. Calumet Township*, 2008 WL 5423482, at *8 (N.D. Ind. 2008). Further, to avoid summary judgment, plaintiff has the burden to present mandatory authority that is directly on point, rather than simply allege that individual defendants violated a general legal precept. Because plaintiff has wholly failed to refute the individual defendants' assertion of qualified immunity, the Court finds that the individual defendants are entitled to summary judgment was to plaintiff's first and second causes of action.

B. Intentional Interference with Contractual Relationship

Plaintiff's third cause of action sets forth a claim against the individual defendants for intentional interference with contractual relationship. In response to arguments and propositions set forth by the individual defendants, plaintiff asserts in his Response that he is voluntarily dismissing the intentional interference claims against the individual defendants with prejudice. Accordingly, the Court dismisses with prejudice plaintiff's cause of action for intentional interference with contractual relationship.

    C.    <u>Discrimination based on Race and Retaliation</u>

Plaintiff asserts a cause of action against the Regents for discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Specifically, plaintiff alleges that race was a substantial factor in the adverse employment decision made by the Regents for its failure and refusal to promote plaintiff to the position of LAN Systems Manager. Plaintiff also brings a cause of action against the Regents for retaliation in violation of Title VII, as premised upon his termination for complaining about racial discrimination.

    1.    *Prima Facie* Case

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a *prima facie* case of discrimination in a failure-to-promote claim by establishing that: (1) he is a member of a protected class; (2) he applied for and was qualified for the position; (3) despite being qualified he was rejected; and (4) after he was rejected, the position was filled or remained available. *Paris v. Southwestern Bell Tel. Co.*, 94 Fed. Appx. 810, 812 (10th Cir. 2004); *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). The Tenth Circuit has observed the following:

> As noted, we have stated that it "should not be obvious" that "the burden imposed on a plaintiff at the prima facie stage is 'not onerous.'" [*EEOC v. Horizon CMS Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2001)] at 1197 (quoting *Texas Dept. of Community Affairs*

6

> *v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In *Horizon* we also noted that "[a] plaintiff alleging discrimination in violation of Title VII can satisfy the fourth element of her prima facie case in a number of ways." 220 F.3d at 1195 n. 6. One of those ways in a discriminatory discharge case is simply by showing that the job was not eliminated. *Id.* (citing *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999), *cert. denied*, 529 U.S. 1110, 120 S.Ct. 1964, 146 L.Ed.2d 796 (2000)); *accord English v. Colorado Dept. of Corrections*, 248 F.3d 1002 (10th Cir. 2001). "The firing of a qualified minority employee raises the inference of discrimination because it is facially illogical for an employer to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement." *Perry v. Woodward*, 199 F.3d at 1140.

*Ortiz v. Norton*, 254 F.3d 889, 895 (10th Cir. 2001).

Because the position of LAN Systems Manager in this case was eliminated in the reorganization, the parties sharply dispute whether the fourth element of the *prima facie* case was met – namely, whether the position was filled or remained available. Although the title of the LAN Systems Manager position was eliminated, plaintiff asserts that a more apt description of what happened to the LAN Systems Manager position was that it was divided into two separate jobs. Allegedly, Mr. Nguyen, plaintiff's internal competitor for the LAN Systems Manager position, is working in the position in some capacity after the reorganization.

Having reviewed the parties' submissions, the Court finds there is a genuine issue of material fact as to whether the fourth element of the *prima facie* case is met. For purposes of summary judgment, the Court finds that plaintiff has established a *prima facie* case for discrimination based upon race since the fourth element of the *prima facie* case may be satisfied "in a number of ways." *Id*.

Title VII retaliation claims generally proceed under the *McDonnel Douglas* burden-shifting analysis. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993). To establish a *prima*

7

*facie* case of retaliation, a plaintiff must show: (1) that he engaged in protected opposition to discrimination; (2) adverse action by the Regents subject to the protected activity; and (3) a causal connection between plaintiff's protected opposition and the adverse action. *McGarry v. Bd. of County Comm'rs of County of Pitkin*, 175 F.3d 1193, 1201 (1999).

Here, plaintiff alleges he complained about racial discrimination to the Regents and that he was terminated based upon his complaints. The Court finds that plaintiff has established a *prima facie* case for retaliation.

### 2. Legitimate, Non-Discriminatory Reason

Having determined that plaintiff has established *prima facie* cases for both discrimination based upon race and retaliation, the burden now shifts to the Regents to articulate a legitimate, nondiscriminatory reason for the employment actions. *See McDonnell Douglas*, 411 U.S. at 802 (if the plaintiff is successful in establishing a *prima facie* case, the defendant must then present a legitimate, non-discriminatory reason for the adverse employment action).

In this case, the Regents contend they have established legitimate, non-discriminatory/non-retaliatory explanations for its action regarding both employment decisions at issue - the failure to promote and the termination of plaintiff's employment. First, the Regents argue that plaintiff's failure-to-promote claim is undermined by the fact that the Regents withdrew the LAN Systems Manager position pursuant to a recommendation by a third-party consultant. Furthermore, the Regents assert that True Digital's Risk Assessment was unconnected to plaintiff's subsequent application for the LAN Systems Manager position. Second, the Regents assert that plaintiff's termination was based upon information by third-party e-forensic/security consultants – namely, that plaintiff had destroyed his laptop by means of a logic bomb.

8

The Regents have articulated that the IT department reorganization was the reason for plaintiff's lack of promotion to the LAN Systems Manager position, and the information provided by way of the forensic and security investigation was the reason for plaintiff's termination. The Court finds, therefore, that the Regents have met this burden as to both discrimination based on race and retaliation.

### 3. Pretext

To survive summary judgment, plaintiff must now come forward with evidence establishing that the Regents' proffered reasons are merely pretext for discrimination based on race and retaliation. *McDonnell Douglas*, 411 U.S. at 804. A plaintiff may show pretext by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's legitimate, nondiscriminatory reason. *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997).

As related to the failure-to-promote racial discrimination cause of action, plaintiff asserts that the Regents eliminated the LAN Systems Manager position only after the committee recommended plaintiff for the position, even though they were working on the reorganization plan a month before the LAN Systems Manager position was posted. Furthermore, plaintiff cites to evidence that the Regents' favored candidate did not prevail in the committee vote. Having reviewed the parties' submissions, the Court finds this evidence sufficient to demonstrate a genuine issue of material fact as to whether there was a failure-to-promote plaintiff based on the impermissible factor of race.

Plaintiff also cites to evidence of pretext on his retaliation/termination cause of action. First, plaintiff argues there is physical evidence that the supposed computer virus threat could not have occurred on plaintiff's laptop computer because of its hardware makeup. Further, plaintiff asserts that True Digital indicated that they entered the safe mode in the laptop, although they could have

9

done so only with plaintiff's password which they did not have at the time. Plaintiff also presents evidence giving rise to the inference that his password did not set off the logic bomb and that other personnel may have known his password. Having reviewed the parties' submissions, the Court finds that plaintiff has established a genuine issue of material fact as to whether he was terminated in retaliation of his complaints of racial discrimination.

Accordingly, the Court finds that plaintiff has submitted sufficient evidence that the reasons the Regents have provided for the failure-to-promote and termination are pretextual, such that summary adjudication of the plaintiff's causes of action for discrimination based on race and retaliation is improper.

### D.     Retaliatory Discharge

Plaintiff asserts a sixth cause of action for retaliatory discharge in violation of Oklahoma public policy prohibiting employment discrimination based on race. The Regents argue that the Oklahoma Governmental Tort Claims Act ("GTCA") requires summary adjudication of plaintiff's public policy cause of action because plaintiff cannot show he has complied with GTCA's notice provision which requires notice to the Regents at least ninety days before any suit is filed.

The GTCA provides that "[n]o action for any cause arising under this act...shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section." Okla. Stat tit. 51, § 157(B). "A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days or less...." Okla. Stat tit. 51, § 157(A). "[C]ompliance with the written notice of claim and denial of claim provisions in §§ 156 and 157 are

prerequisites to the state's consent to be sued and to the exercise of judicial power to remedy the alleged tortious wrong by the government." *Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (Okla. 1996).

In this case, plaintiff appears to have prematurely commenced this action on May 4, 2009 before his Notice of Claim was received on May 6, 2009 by the state. Clearly, the written notice of claim and denial of claim provisions must be fully exhausted before filing suit. Alternatively, plaintiff counters that his Equal Employment Opportunity Commission ("EEOC") Charge satisfies the GTCA notice requirement. The Court, however, fails to see how a submission to a federal investigatory agency would constitute notice when the statute is clear that such notice shall be provided to the state or its political subdivisions. Therefore, the Court finds that notice to the EEOC does not constitute notice to the state or its political subdivisions.

Accordingly, the Court finds that summary adjudication is proper as to plaintiff's retaliatory discharge in violation of Oklahoma public policy cause of action.

IV.  CONCLUSION[3]

Accordingly, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment as follows:

(A) The Court GRANTS defendants' motion for summary judgment with respect to plaintiff's causes of action of the violation of 42 U.S.C. § 1981 against the individual defendants, violation of 42 U.S.C. § 1983 against the individual defendants and retaliatory discharge in violation of Oklahoma public policy against the Regents;

(B) The Court DISMISSES with prejudice plaintiff's cause of action against the individual defendants for intentional interference with contractual relationship; and

(C) The Court DENIES defendants' motion for summary judgment as to plaintiff's causes of action against the Regents for discrimination based on race and retaliation.

**IT IS SO ORDERED this 1st day of March, 2011.**

*[signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] At this time, the Court declines to review the issue of after-acquired evidence doctrine as related to this case, until such time as both parties can be heard.